UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>COOKSON GROUP PLC,<br>COOKSON AMERICA INC.,<br>FOSECO PLC, and<br>FOSECO METALLURGICAL INC.,<br><br>Defendants. | CASE NO.: **08 0389**<br><br>JUDGE:<br><br>DECK TYPE: Antitrust<br><br>DATE STAMP: **FILED**<br><br>MAR 2 0 2008<br><br>NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

## HOLD SEPARATE STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

### I. DEFINITIONS

As used in this Hold Separate Stipulation and Order:

A.  "Acquirer" means the entity to whom defendants divest the Divestiture Business.

B.  "Cookson" means defendant Cookson Group plc, a United Kingdom corporation with its headquarters in London, England, and Cookson America Inc., a Delaware corporation with its headquarters in Providence, Rhode Island and includes its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C.  "Foseco" means defendant Foseco plc, a United Kingdom corporation with its headquarters in Tamworth, Staffordshire, England, and Foseco Metallurgical Inc., a Delaware

corporation with its headquarters in Cleveland, Ohio and includes its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

D.     "CBCs" means consumable, isostatically pressed refractory products made of carbon-bonded alumina graphite that control the flow of molten steel from the steel ladle to the continuous casting mold during the continuous casting of steel.

E.     "Divestiture Business" means Foseco's entire business engaged in the development, design, production, servicing, distribution, and sale of CBCs in the United States, including:

   1.    Foseco's Saybrook, Ohio facility, and the related leasehold;

   2.    all tangible assets used in the development, design, production, servicing, distribution, and sale of CBCs in the United States, including but not limited to all research data and activities and development activities; all manufacturing equipment, including but not limited to batch mix equipment, presses, drying and oven/kilning, finishing, packaging, and tooling; all fixed assets, real property (leased or owned), personal property, inventory, office furniture, materials, supplies, on- or off-site warehouses or storage facilities relating to the factory and property, and all other tangible property; all licenses, permits and authorizations issued by any governmental organization; all contracts, teaming arrangements, agreements, leases (including renewal rights), commitments, certifications, and understandings, including supply agreements; all customer lists, contracts, accounts, and credit records or similar records of all sales and potential sales; all

sales support and promotional materials, advertising materials, and production, sales and marketing files; all repair and performance records; all other records; and, at the option of the Acquirer, Foseco's U.S. water-modeling assets;

3. all intangible assets used in the development, design, production, servicing, distribution, and sale of CBCs in the United States, including, but not limited to, all patents, all pending patent applications, licenses and sublicenses, intellectual property, copyrights, trademarks (registered and unregistered), trade names, service marks, and service names relating to the Divestiture Business, but excluding the corporate-level name and device and trademark of Foseco; all technical information, computer software and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, all research data concerning historic and current research and development; quality assurance and control procedures, design tools, and simulation capability; all manuals and technical information provided to employees, customers, suppliers, agents or licensees, and all research data concerning historic and current research and development efforts relating to the Divestiture Business, including, but not limited to, designs of CBCs, and the results of successful and unsuccessful designs and trials; and

4. notwithstanding anything to the contrary in the Final Judgment, if requested by an Acquirer, and subject to the approval of the United States in its sole discretion, defendants shall offer to enter into a transition services agreement

for a limited period with respect to certain support services (e.g., HR, IT, and/or health and safety).

## II. **OBJECTIVES**

The proposed Final Judgment filed in this case is meant to ensure defendants' prompt divestiture of the Divestiture Business for the purpose of maintaining competition in the manufacture and sale of CBCs in the United States in order to remedy the effects that the United States alleges would otherwise result from Cookson's acquisition of Foseco. This Hold Separate Stipulation and Order ensures that, prior to such divestiture, the Divestiture Business remains an independent, economically viable, and ongoing business concern that will remain independent and uninfluenced by Cookson's acquisition of Foseco, and that competition is maintained during the pendency of the ordered divestiture.

## III. **JURISDICTION AND VENUE**

This Court has jurisdiction over the subject matter of this action and defendants do not object either to the Court's exercise of personal jurisdiction in this case or to the propriety of venue of this action in the United States District Court for the District of Columbia.

## IV. **COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT**

A. The parties stipulate that a Final Judgment in the form attached hereto as Exhibit A may be filed with and entered by the Court, upon the motion of any party or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act ("APPA"), 15 U.S.C. § 16, and without further notice to any party or other proceedings, provided that the United States has not withdrawn its consent, which it may do at

any time before the entry of the proposed Final Judgment by serving notice thereof on defendants and by filing that notice with the Court.

    B.    Defendants shall abide by and comply with the provisions of the proposed Final Judgment, pending the Judgment's entry by the Court, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of the signing of this Hold Separate Stipulation and Order by the parties, comply with all the terms and provisions of the proposed Final Judgment as though the same were in full force and effect as an Order of the Court.

    C.    Defendants shall not consummate the transaction sought to be enjoined by the Complaint herein before the Court has signed this Hold Separate Stipulation and Order.

    D.    This Hold Separate Stipulation and Order shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

    E.    In the event: (1) the United States has withdrawn its consent, as provided in Paragraph IV(A) above; or (2) the proposed Final Judgment is not entered pursuant to this Hold Separate Stipulation and Order, the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further obligations under this Hold Separate Stipulation and Order, and the making of this Hold Separate Stipulation and Order shall be without prejudice to any party in this or any other proceeding.

F.      Defendants represent that the divestiture ordered in the proposed Final Judgment can and will be made and that defendants later will raise no claim of mistake, hardship, or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

## V. **HOLD SEPARATE PROVISIONS**

Until the divestiture required by the Final Judgment has been accomplished:

A.      Defendants shall preserve, maintain, and continue to operate the Divestiture Business as an independent, ongoing, economically viable competitive business, with management, sales, and operations of such assets held entirely separate, distinct, and apart from those of defendants' other operations. Defendants shall not coordinate their production, marketing, or terms of sale of any products with those produced by or sold under the Divestiture Business. Within twenty (20) days after the entry of this Hold Separate Stipulation and Order, defendants will inform the United States of the steps defendants have taken to comply with this Hold Separate Stipulation and Order.

B.      Defendants shall take all steps necessary to ensure that: (1) the Divestiture Business will be maintained and operated as an independent, ongoing, economically viable, and active competitor in the CBC business; (2) management of the Divestiture Business will not be influenced by defendants; and (3) the books, records, competitively sensitive sales, marketing, and pricing information, and decision-making concerning the production, distribution, and sale of products produced by or sold under the Divestiture Business will be kept separate and apart from defendants' other operations.

C. Defendants shall use all reasonable efforts to maintain and increase the sales and revenues of the products produced by or sold under the Divestiture Business, and shall maintain at 2008 or previously approved levels for 2009, whichever are higher, all promotional, advertising, sales, technical assistance, marketing, and merchandising support for the Divestiture Business.

D. Defendants shall provide sufficient working capital and lines and sources of credit to continue to maintain the Divestiture Business as an economically viable and competitive, ongoing business, consistent with the requirements of Paragraphs V(A) and (B).

E. Defendants shall take all steps necessary to ensure that the Divestiture Business is fully maintained in operable condition at no less than current capacity and sales and shall maintain and adhere to normal repair and maintenance schedules for the Divestiture Business.

F. Defendants shall not, except as part of a divestiture approved by the United States in accordance with the terms of the proposed Final Judgment, remove, sell, lease, assign, transfer, pledge, or otherwise dispose of any asset or assets of the Divestiture Business.

G. Defendants shall maintain, in accordance with sound accounting principles, separate, accurate, and complete financial ledgers, books, and records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues, and income of the Divestiture Business.

H. Defendants shall take no action that would jeopardize, delay, or impede the sale of the Divestiture Business.

I. Defendants' employees with primary responsibility for the production, operation, and sale of CBCs for the Divestiture Business, shall not be transferred or reassigned to other

areas within the company except for transfer bids initiated by employees pursuant to defendants' regular, established job posting policy. Defendants shall provide the United States with ten (10) calendar days notice of such transfer.

J.	Defendants shall appoint a person or persons, subject to the approval of the United States in its sole discretion, to oversee the Divestiture Business, and who will be responsible for defendants' compliance with this Section. This person shall have complete managerial responsibility for the Divestiture Business, subject to the provisions of the proposed Final Judgment. In the event such person is unable to perform his duties, defendants shall appoint, subject to the approval of the United States in its sole discretion, a replacement within ten (10) working days. Should defendants fail to appoint a replacement acceptable to the United States within this time period, the United States shall appoint a replacement.

K.	Defendants shall take no action that would interfere with the ability of any trustee appointed pursuant to the Final Judgment to complete the divestiture pursuant to the Final Judgment to an Acquirer acceptable to the United States.

L.	This Hold Separate Stipulation and Order shall remain in effect until: (1) the consummation of the divestiture required by the proposed Final Judgment; (2) further order of the Court; or (3) the United States' voluntary dismissal of the Complaint in this matter.

Dated: 3/4 , 2008

Respectfully submitted,

FOR PLAINTIFF
UNITED STATES OF AMERICA:

_____
Leslie Peritz, Esquire
United States Department of Justice
Antitrust Division, Litigation II Section
1401 H Street, NW, Suite 3000
Washington, D.C. 20530
(202) 307-0924

FOR DEFENDANTS
COOKSON GROUP PLC and
COOKSON AMERICA INC.:

_____
Thomas A. McGrath, Esquire
Linklaters LLP
1345 Avenue of the Americas
New York, New York 10105
(212) 903-9140

FOR DEFENDANT
FOSECO PLC and
FOSECO METALLURGICAL INC.:

_____
Anthony Swisher, Esquire
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
(202) 887-4263

ORDER

IT IS SO ORDERED by the Court, this 20th day of March , 2008.

_____
United States District Judge

9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>COOKSON GROUP PLC,<br>COOKSON AMERICA INC.,<br>FOSECO PLC, and<br>FOSECO METALLURGICAL INC.,<br><br>    Defendants. | CASE NO.:<br><br>JUDGE:<br><br>DECK TYPE: Antitrust<br><br>DATE STAMP: |

## CERTIFICATE OF SERVICE

I, Leslie D. Peritz, hereby certify that on March 4, 2008, I caused a copy of the foregoing Complaint, Hold Separate Stipulation and Order, and proposed Final Judgment to be served upon defendants COOKSON GROUP PLC and COOKSON AMERICA INC. and FOSECO PLC AND FOSECO METALLURGICAL INC., by mailing the document electronically to the duly authorized legal representatives of defendants as follows:

Counsel for COOKSON GROUP PLC
and COOKSON AMERICA INC.:

Thomas A. McGrath, Esquire
Linklaters LLP
1345 Avenue of the Americas
New York, New York 10105
(212)903-9140

Counsel for FOSECO PLC
and FOSECO METALLURGICAL INC.:

Anthony Swisher, Esquire
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
(202 887-4263

_____
Leslie D. Peritz
PA Bar No. 87539
Attorney
U.S. Department of Justice
Antitrust Division
1401 H Street, N.W., Suite 3000
Washington, D.C. 20530
(202) 307-0924