UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>COOKSON GROUP PLC,<br>COOKSON AMERICA INC.,<br>FOSECO PLC, and<br>FOSECO METALLURGICAL INC.,<br><br>Defendants. | Civil No. 1:2008 CV 00389<br><br>JUDGE: Hon. R.M. Urbina<br><br>DECK TYPE:  Antitrust<br><br>Filed: |

MOTION AND MEMORANDUM OF
THE UNITED STATES IN SUPPORT OF ENTRY OF FINAL JUDGMENT

Pursuant to Section 2(b) of the Antitrust Procedures and Penalties Act, 15 U.S.C.

§ 16(b)-(h) ("APPA"), plaintiff, the United States of America ("United States") moves for entry

of the proposed Final Judgment filed in this civil antitrust proceeding.  The proposed Final

Judgment may be entered at this time without further hearing if the Court determines that entry is

in the public interest.  The Competitive Impact Statement ("CIS"), filed in this matter on March

4, 2008, explains why entry of the proposed Final Judgment would be in the public interest.  The

United States is filing simultaneously with this Motion and Memorandum a Certificate of

Compliance setting forth the steps taken by the parties to comply with all applicable provisions

of the APPA and certifying that the statutory waiting period has expired.

I.     **Background**

On March 4, 2008, the United States filed a civil antitrust Complaint alleging that the

proposed acquisition of Foseco plc ("Foseco") by Cookson Group plc ("Cookson") would substantially lessen competition in violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.  Cookson and Foseco both manufacture and sell isostatically pressed carbon bonded ceramics products ("CBCs"), which are used to control the flow and enhance the quality of steel produced in the continuous casting steelmaking process.  The Complaint alleges Cookson's proposed acquisition of Foseco would combine two of only three North American manufacturers of certain CBCs - ladle shrouds and stopper rods - that sell to U.S. customers.  As alleged in the Complaint, the transaction would remove a significant competitor and independent bidder in the already highly concentrated and difficult-to-enter North American markets for ladle shrouds and stopper rods, thereby harming consumers.  Accordingly, the Complaint seeks to permanently enjoin the proposed acquisition by requesting a judgment that the acquisition violates Section 7 of the Clayton Act.

At the same time the Complaint was filed, the United States filed a Hold Separate Stipulation and Order ("HSSO") and a proposed Final Judgment, which are designed to eliminate the anticompetitive effects of the acquisition, and a CIS.  The Court signed and entered the HSSO on March 20, 2008.  The proposed Final Judgment requires Cookson, within 90 days after the filing of the Complaint, or five days after notice of the entry of the Final Judgment by the Court, whichever is later, to divest, as a viable business operation, the Divestiture Business, which means Foseco's entire business engaged in the manufacture and sale of CBCs in the United States.[1]  If defendant does not complete the divestiture within the prescribed time, then, under the terms of the proposed Final Judgment, this Court will appoint a trustee to sell the

---

[1]  The defendants completed the divestiture, in compliance with the terms of the proposed Final Judgment, on April 11, 2008.

Divestiture Business. The HSSO and the proposed Final Judgment require defendant to preserve, maintain and continue to operate the Divestiture Business in the ordinary course of business, including reasonable efforts to maintain and increase sales and revenues. The CIS explains the basis for the Complaint and the reasons why entry of the proposed Final Judgment would be in the public interest.

The HSSO provides that the proposed Final Judgment may be entered by the Court after the completion of the procedures required by the APPA. Entry of the proposed Final Judgment would terminate this action, except that the Court would retain jurisdiction to construe, modify, or enforce the provisions of the proposed Final Judgment and to punish violations thereof.

## II.    Compliance with the APPA

The APPA requires a sixty-day period for the submission of public comments on a proposed Final Judgment. *See* 15 U.S.C. § 16(b). In compliance with the APPA, the United States filed the CIS on March 4, 2008; published the proposed Final Judgment and CIS in the *Federal Register* on March 18, 2008 (*see United States v. Cookson plc, et al,* 73 Fed. Reg. 14489); and published summaries of the terms of the proposed Final Judgment and CIS, together with directions for the submission of written comments relating to the proposed Final Judgment, in *The Washington Post* for seven days beginning on April 4, 2008 and ending on April 10, 2008.

The sixty-day public comment period terminated on May 17, 2008, and the United States received no public comments. The United States is filing a Certificate of Compliance simultaneously with this Motion and Memorandum that states all the requirements of the APPA have been satisfied. It is now appropriate for the Court to make the public interest determination required by 15 U.S.C. § 16(e) and to enter the proposed Final Judgment.

## III.    Standard of Judicial Review

The Clayton Act, as amended by the APPA, requires that proposed consent judgments in antitrust cases brought by the United States be subject to a sixty-day comment period, after which the Court shall determine whether entry of the proposed Final Judgment "is in the public interest." 15 U.S.C. § 16(e)(1). In making that determination, the court, in accordance with the statute as amended in 2004,[2] is required to consider:

> (A)    the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually considered, whether its terms are ambiguous, and any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest; and

> (B)    the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.

15 U.S.C. § 16(e)(1)(A)-(B). In considering these statutory factors, the court's inquiry is necessarily a limited one as the government is entitled to "broad discretion to settle with the defendant within the reaches of the public interest." *United States v. Microsoft Corp.*, 56 F.3d 1448, 1461 (D.C. Cir. 1995); *see generally United States v. SBC Commc'ns, Inc.*, 489 F. Supp. 2d 1 (D.D.C. 2007) (assessing public interest standard under the Tunney Act).

As the United States Court of Appeals for the District of Columbia Circuit has held, under the APPA a court considers, among other things, the relationship between the remedy

---

[2] The 2004 amendments substituted "shall" for "may" in directing relevant factors for court to consider and amended list of factors to focus on competitive considerations and to address potentially ambiguous judgment terms. *Compare* 15 U.S.C. § 16(e) (2004), *with* 15 U.S.C. § 16(e)(1) (2006); *see also United States v. SBC Commc'ns, Inc.*, 489 F. Supp. 2d 1, 11 (D.D.C. 2007) (concluding that the 2004 amendments "effected minimal changes" to Tunney Act review).

secured and the specific allegations set forth in the government's complaint, whether the decree

is sufficiently clear, whether enforcement mechanisms are sufficient, and whether the decree may

positively harm third parties. *See Microsoft*, 56 F.3d at 1458-62. With respect to the adequacy

of the relief secured by the decree, a court may not "engage in an unrestricted evaluation of what

relief would best serve the public." *United States v. BNS, Inc.*, 858 F.2d 456, 462 (9th Cir. 1988)

(citing *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981)); *see also Microsoft*, 56

F.3d at 1460-62. Courts have held that:

> [t]he balancing of competing social and political interests affected by a proposed
> antitrust consent decree must be left, in the first instance, to the discretion of the
> Attorney General. The court's role in protecting the public interest is one of
> insuring that the government has not breached its duty to the public in consenting
> to the decree. The court is required to determine not whether a particular decree is
> the one that will best serve society, but whether the settlement is "*within the
> reaches of the public interest.*" More elaborate requirements might undermine the
> effectiveness of antitrust enforcement by consent decree.

*Bechtel*, 648 F.2d at 666 (emphasis added) (citations omitted).[3] In making its public interest

determination, a district court "must accord deference to the government's predictions about the

efficacy of its remedies, and may not require that the remedies perfectly match the alleged

violations because this may only reflect underlying weakness in the government's case or

concessions made during negotiation." *SBC Commc'ns*, 489 F. Supp. 2d at 17; *see also*

*Microsoft*, 56 F.3d at 1461 (noting need for courts to be "deferential to the government's

predictions as to the effect of the proposed remedies"); *United States v. Archer-Daniels-Midland*

---

[3] *Cf. BNS*, 858 F.2d at 464 (holding that the court's "ultimate authority under the [APPA]
is limited to approving or disapproving the consent decree"); *United States v. Gillette Co.*, 406 F.
Supp. 713, 716 (D. Mass. 1975) (noting that, in this way, the court is constrained to "look at the
overall picture not hypercritically, nor with a microscope, but with an artist's reducing glass"),
*aff'd sub nom. Maryland v. United States*, 460 U.S. 1001 (1983). *See generally Microsoft*, 56
F.3d at 1461 (discussing whether "the remedies [obtained in the decree are] so inconsonant with
the allegations charged as to fall outside of the 'reaches of the public interest'").

*Co.*, 272 F. Supp. 2d 1, 6 (D.D.C. 2003) (noting that the court should grant due respect to the United States' prediction as to the effect of proposed remedies, its perception of the market structure, and its views of the nature of the case).

Courts have greater flexibility in approving proposed consent decrees than in crafting their own decrees following a finding of liability in a litigated matter. "[A] proposed decree must be approved even if it falls short of the remedy the court would impose on its own, as long as it falls within the range of acceptability or is 'within the reaches of public interest.'" *United States v. AT&T Co.*, 552 F. Supp. 131, 151 (D.D.C. 1982) (citations omitted) (quoting *Gillette*, 406 F. Supp. at 716); *see also United States v. Alcan Aluminum Ltd.*, 605 F. Supp. 619, 622 (W.D. Ky. 1985) (approving the consent decree even though the court would have imposed a greater remedy). To meet this standard, the United States "need only provide a factual basis for concluding that the settlements are reasonably adequate remedies for the alleged harms." *SBC Commc'ns*, 489 F. Supp. 2d at 17.

Moreover, the Court's role under the APPA is limited to reviewing the remedy in relationship to the violations that the United States has alleged in its Complaint, and does not authorize the Court to "construct [its] own hypothetical case and then evaluate the decree against that case." *Microsoft*, 56 F.3d at 1459. Because the "court's authority to review the decree depends entirely on the government's exercising its prosecutorial discretion by bringing a case in the first place," it follows that "the court is only authorized to review the decree itself," and not to "effectively redraft the complaint" to inquire into other matters that the United States did not pursue. *Id.* at 1459-60. As this Court recently confirmed in *SBC Communications*, courts "cannot look beyond the complaint in making the public interest determination unless the complaint is drafted so narrowly as to make a mockery of judicial power." 489 F. Supp. 2d at 15.

In its 2004 amendments, Congress made clear its intent to preserve the practical benefits of utilizing consent decrees in antitrust enforcement, adding the unambiguous instruction "[n]othing in this section shall be construed to require the court to conduct an evidentiary hearing or to require the court to permit anyone to intervene." 15 U.S.C. § 16(e)(2). This instruction explicitly writes into the statute the standard intended by the Congress that enacted the Tunney Act in 1974 , as Senator Tunney then explained: "[t]he court is nowhere compelled to go to trial or to engage in extended proceedings which might have the effect of vitiating the benefits of prompt and less costly settlement through the consent decree process." 119 Cong. Rec. 24,598 (1973) (statement of Senator Tunney). Rather, the procedure for the public interest determination is left to the discretion of the court, with the recognition that the scope of the court's "review remains sharply proscribed by precedent and the nature of Tunney Act proceedings." *SBC Commc'ns*, 489 F. Supp. 2d at 11.[4]

## IV.    Conclusion

For the reasons set forth in this Motion and Memorandum and in the CIS, the Court should find that the proposed Final Judgment is in the public interest and should enter the Final Judgment without further hearings. The United States respectfully requests that the Final Judgment annexed hereto be entered as soon as possible.

---

[4] *See United States v. Enova Corp.*, 107 F. Supp. 2d 10, 17 (D.D.C. 2000) (noting that the "Tunney Act expressly allows the court to make its public interest determination on the basis of the competitive impact statement and response to comments alone"); S. Rep. No. 93-298, 93d Cong., 1st Sess., at 6 (1973) ("Where the public interest can be meaningfully evaluated simply on the basis of briefs and oral arguments, that is the approach that should be utilized."); *United States v. Mid-Am. Dairymen, Inc.*, 1977-1 Trade Cas. (CCH) 61,508, at 71,980 (W.D. Mo. 1977) ("[T]he Court, in making its public interest finding, should . . . carefully consider the explanations of the government in order to determine whether those explanations are reasonable under the circumstances.").

Dated:  May 22, 2008

Respectfully submitted,

Leslie D. Peritz
PA Bar No. 87539
Litigation II Section
Antitrust Division
U.S. Department of Justice
1401 H Street, NW, Suite 3000
Washington, D.C. 2053
(202) 307-0924

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: |
| Plaintiff, | |
| | JUDGE: |
| v. | |
| COOKSON GROUP PLC, | DECK TYPE: Antitrust |
| COOKSON AMERICA INC., | |
| FOSECO PLC, and | |
| FOSECO METALLURGICAL INC., | DATE STAMP: |
| Defendants. | |

## FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint on 3/4/2008, the

United States and defendants, Cookson Group plc and Cookson America Inc. and Foseco plc and

Foseco Metallurgical Inc., by their respective attorneys, have consented to the entry of this Final

Judgment without trial or adjudication of any issue of fact or law, and without this Final

Judgment constituting any evidence against or admission by any party regarding any issue of fact

or law;

AND WHEREAS, defendants agree to be bound by the provisions of this Final Judgment

pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain

divestiture of certain rights or assets by the defendants to assure that competition is not

substantially lessened;

AND WHEREAS, the United States requires defendants to make a certain divestiture for

the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendants have represented to the United States that the divestiture required below can and will be made and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. **Jurisdiction**

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. **Definitions**

As used in this Final Judgment:

A.    "Cookson" means defendant Cookson Group plc, a United Kingdom corporation with its headquarters in London, England, and Cookson America Inc., a Delaware Corporation with its headquarters in Providence, Rhode Island and includes its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

B.    "Foseco" means defendant Foseco plc, a United Kingdom corporation with its headquarters in Tamworth, Staffordshire, England, and Foseco Metallurgical Inc., a Delaware corporation with its headquarters in Cleveland, Ohio and includes its successors and assigns, and

2

its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors,

officers, managers, agents, and employees.

     C.    "CBCs" means consumable, isostatically pressed refractory products made of

carbon-bonded alumina graphite that control the flow of molten steel from the steel ladle to the

continuous casting mold during the continuous casting of steel.

     D.    "Divestiture Business" means Foseco's entire business engaged in the

development, design, production, servicing, distribution, and sale of CBCs in the United States,

including:

         1.    Foseco's Saybrook, Ohio facility, and the related leasehold;

         2.    all tangible assets used in the development, design, production, servicing,

distribution, and sale of CBCs in the United States, including but not limited to all

research data and activities and development activities; all manufacturing

equipment, including but not limited to batch mix equipment, presses, drying and

oven/kilning, finishing, packaging, and tooling; all fixed assets, real property

(leased or owned), personal property, inventory, office furniture, materials,

supplies, on- or off-site warehouses or storage facilities relating to the factory and

property, and all other tangible property; all licenses, permits and authorizations

issued by any governmental organization; all contracts, teaming arrangements,

agreements, leases (including renewal rights), commitments, certifications, and

understandings, including supply agreements; all customer lists, contracts,

accounts, and credit records or similar records of all sales and potential sales; all

sales support and promotional materials, advertising materials, and production,

3

sales and marketing files; all repair and performance records; all other records; and, at the option of the Acquirer, Foseco's U.S. water-modeling assets;

3.    all intangible assets used in the development, design, production, servicing, distribution, and sale of CBCs in the United States, including, but not limited to, all patents, all pending patent applications, licenses and sublicenses, intellectual property, copyrights, trademarks (registered and unregistered), trade names, service marks, and service names relating to the Divestiture Business, but excluding the corporate-level name and device and trademark of Foseco; all technical information, computer software and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, all research data concerning historic and current research and development; quality assurance and control procedures, design tools, and simulation capability; all manuals and technical information provided to employees, customers, suppliers, agents or licensees, and all research data concerning historic and current research and development efforts relating to the Divestiture Business, including, but not limited to, designs of CBCs, and the results of successful and unsuccessful designs and trials; and

4.    notwithstanding anything to the contrary in this Final Judgment, if requested by an Acquirer, and subject to the approval of the United States in its sole discretion, defendants shall offer to enter into a transition services agreement

4

for a limited period with respect to certain support services (e.g., HR, IT, and/or health and safety).

E.    "Bonnybridge Business" means Foseco's European CBC business and its facilities in Bonnybridge, Stirlingshire, Scotland, which the European Commission has required to be divested along with the Divestiture Business.

F.    "Acquirer" means the entity to which defendants divest the Divestiture Business.

### III. Applicability

A.    This Final Judgment applies to Cookson and Foseco, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.    If, prior to complying with Section IV and V of this Final Judgment, defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Business, they shall require the purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from the Acquirer of the assets divested pursuant to this Final Judgment.

### IV. Divestiture

A.    Defendants are ordered and directed, within ninety (90) calendar days after the filing of the Complaint in this matter, or five (5) calendar days after notice of the entry of this Final Judgment by the Court, whichever is later, to divest the Divestiture Business in a manner consistent with this Final Judgment to an Acquirer acceptable to the United States, in its sole discretion after consultation with the European Commission. The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed 60 calendar

5

days in total, and shall notify the Court in such circumstances. Defendants agree to use their best efforts to divest the Divestiture Business as expeditiously as possible.

B.      In accomplishing the divestiture ordered by this Final Judgment, defendants promptly shall make known, by usual and customary means, the availability of the Divestiture Business. Defendants shall inform any person making inquiry regarding a possible purchase of the Divestiture Business that it is being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. Defendants shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Business customarily provided in a due diligence process except such information or documents subject to the attorney-client privileges or work-product doctrine. Defendants shall make available such information to the United States at the same time that such information is made available to any other person.

C.      Defendants shall provide the Acquirer and the United States information relating to the personnel involved in the production, operation, research and development, design, and sale of CBCs to enable the Acquirer to make offers of employment. Defendants shall not interfere with any negotiations by the Acquirer to employ or contract with any defendant employee responsible for any such activity related to the Divestiture Business.

D.      Defendants shall permit prospective Acquirers of the Divestiture Business to have reasonable access to personnel responsible for the Divestiture Business; to make inspections of the physical facilities of the Divestiture Business; to have access to any and all environmental, zoning, and other permit documents and information; and to have access to any and all financial,

6

operational, or other documents and information customarily provided as part of a due diligence process.

     E.     Defendants shall warrant to the Acquirer that the Divestiture Business will be operational on the date of sale.

     F.     Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Business.

     G.     Defendants shall warrant to the Acquirer that there are no material defects in the environmental, zoning or other permits pertaining to the operation of the Divestiture Business, and that following the sale of the Divestiture Business, defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Business.

     H.     Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV, or by trustee appointed pursuant to Section V, of this Final Judgment, shall include the entire Divestiture Business, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Business can and will be used by the Acquirer as part of a viable, ongoing business for the manufacture and sale of CBCs in the United States. The divestiture, whether pursuant to Section IV or Section V of this Final Judgment,

     1.     shall be made to the acquirer of the Bonnybridge Business;

     2.     shall be made to an Acquirer that, in the United States's sole judgment, has the intent and capability (including the necessary managerial, operational, technical and financial capability) of competing effectively in the manufacture and sale of CBCs in the United States; and

3.      shall be accomplished so as to satisfy the United States, in its

sole discretion, that none of the terms of any agreement between an

Acquirer and defendants give defendants the ability unreasonably to

raise the Acquirer's costs, to lower the Acquirer's efficiency, or

otherwise to interfere in the ability of the Acquirer to compete

effectively in the manufacture and sale of CBCs in the United States.

## V. <u>Appointment of Trustee</u>

A.      If defendants have not divested the Divestiture Business within the time

period specified in Section IV(A), defendants shall notify the United States of that fact

in writing.  Upon application of the United States, the Court shall appoint a trustee

selected by the United States, in consultation with the European Commission to ensure

selection of a trustee acceptable to both the United States and the European

Commission, and approved by the Court to effect the divestiture of the Divestiture

Business.

B.      After the appointment of a trustee becomes effective, only the trustee

shall have the right to sell the Divestiture Business.  The trustee shall have the power

and authority to accomplish the divestiture to an Acquirer acceptable to the United

States at such price and on such terms as are then obtainable upon reasonable effort by

the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment,

and shall have such other powers as this Court deems appropriate.  Subject to Section

V(D) of this Final Judgment, the trustee may hire at the cost and expense of defendants

8

any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture.

C.    Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance or that the Acquirer has not been approved by the European Commission.  Any objection by defendants on the ground of trustee malfeasance must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI; any objection by defendants based on lack of approval from the European Commission must be conveyed in writing to the United States and the trustee within the later of (i) five (5) days after the United States provides defendants with written notice, pursuant to Section VI(C), stating that it does not object to the proposed divestiture of the Divestiture Business or (ii) two (2) business days after the European Commission notifies defendants that it does not approve of the proposed Acquirer.

D.    The trustee shall serve at the cost and expense of defendants, on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred.  After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to defendants and the trust shall then be terminated.  The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Business and based on a fee

9

arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

E.    Defendants shall use their best efforts to assist the trustee in accomplishing the required divestiture. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, and defendants shall develop financial and other information relevant to such business as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

F.    After its appointment, the trustee shall file monthly reports with the United States and the Court setting forth the trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Business, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest the Divestiture Business.

G.      If the trustee has not accomplished the divestiture ordered under this

Final Judgment within six months after its appointment, the trustee shall promptly file

with the Court a report setting forth (1) the trustee's efforts to accomplish the required

divestiture, (2) the reasons, in the trustee's judgment, why the required divestiture has

not been accomplished, and (3) the trustee's recommendations.  To the extent such

reports contain information that the trustee deems confidential, such reports shall not be

filed in the public docket of the Court.  The trustee shall at the same time furnish such

report to the United States which shall have the right to make additional

recommendations consistent with the purpose of the trust.  The Court thereafter shall

enter such orders as it shall deem appropriate to carry out the purpose of the Final

Judgment, which may, if necessary, include extending the trust and the term of the

trustee's appointment by a period requested by the United States.

## VI.  **Notice of Proposed Divestiture**

A.      Within two (2) business days following execution of a definitive

divestiture agreement, defendants or the trustee, whichever is then responsible for

effecting the divestiture required herein, shall notify the United States of any proposed

divestiture required by Section IV or V of this Final Judgment.  If the trustee is

responsible, it shall similarly notify defendants.  The notice shall set forth the details of

the proposed divestiture and list the name, address, and telephone number of each

person not previously identified who offered or expressed an interest in or desire to

acquire any ownership interest in the Divestiture Business, together with full details of

the same.

11

B.      Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from defendants, the proposed Acquirer(s), any other third party, or the trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer(s), and any other potential Acquirer. Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from defendants, the proposed Acquirer(s), any third party, and the trustee, whichever is later, the United States shall provide written notice to defendants and the trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to defendants' limited right to object to the sale under Section V(C) of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated. Upon objection by defendants under Section V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII. <u>Financing</u>

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

12

## VIII. **Hold Separate**

Until the divestiture required by this Final Judgment has been accomplished, defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court. Defendants shall take no action that would jeopardize the divestiture ordered by this Court.

## IX. **Affidavits**

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or V, defendants shall deliver to the United States an affidavit as to the fact and manner of its compliance with Section IV or V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Business, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts defendants have taken to solicit buyers for the Divestiture Business, and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by defendants, including limitations on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

13

B.      Within twenty (20) calendar days of the filing of the Complaint in this

matter, defendants shall deliver to the United States an affidavit that describes in

reasonable detail all actions defendants have taken and all steps defendants have

implemented on an ongoing basis to comply with Section VIII of this Final Judgment.

Defendants shall deliver to the United States an affidavit describing any changes to the

efforts and actions outlined in defendants' earlier affidavits filed pursuant to this section

within fifteen (15) calendar days after the change is implemented.

C.      Defendants shall keep all records of all efforts made to preserve and

divest the Divestiture Business until one year after such divestiture has been completed.

## X. **Compliance Inspection**

A.      For the purposes of determining or securing compliance with this Final

Judgment, or of determining whether the Final Judgment should be modified or

vacated, and subject to any legally recognized privilege, from time to time authorized

representatives of the United States Department of Justice, including consultants and

other persons retained by the United States, shall, upon written request of an authorized

representative of the Assistant Attorney General in charge of the Antitrust Division, and

on reasonable notice to defendants, be permitted:

> 1.      access during defendants' office hours to inspect and copy, or at
>
> the option of the United States, to require defendants to provide hard
>
> copy or electronic copies of, all books, ledgers, accounts, records, data,
>
> and documents in the possession, custody, or control of defendants,
>
> relating to any matters contained in this Final Judgment; and

14

2.      to interview, either informally or on the record, defendants'

officers, employees, or agents, who may have their individual counsel

present, regarding such matters.  The interviews shall be subject to the

reasonable convenience of the interviewee and without restraint or

interference by defendants.

B.      Upon the written request of an authorized representative of the Assistant

Attorney General in charge of the Antitrust Division, defendants shall submit written

reports or responses to written interrogatories, under oath if requested, relating to any of

the matters contained in this Final Judgment as may be requested.

C.      No information or documents obtained by the means provided in this

section shall be divulged by the United States to any person other than an authorized

representative of the executive branch of the United States, except in the course of legal

proceedings to which the United States is a party (including grand jury proceedings), or

for the purpose of securing compliance with this Final Judgment, or as otherwise

required by law.

D.      If at the time information or documents are furnished by defendants to

the United States, defendants represent and identify in writing the material in any such

information or documents to which a claim of protection may be asserted under Rule

26(c)(7) of the Federal Rules of Civil Procedure, and defendants mark each pertinent

page of such material, "Subject to claim of protection under Rule 26(c)(7) of the

Federal Rules of Civil Procedure," then the United States shall give defendants ten (10)

calendar days notice prior to divulging such material in any legal proceeding (other than

a grand jury proceeding).

## XI.  No Reacquisition

Defendants may not reacquire any part of the Divestiture Business during the term of this Final Judgment.

## XII.  Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII.  Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

## XIV.  Public Interest Determination

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States's responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

16

Date: _____

Court approval subject to procedures
of Antitrust Procedures and Penalties
Act, 15 U.S.C. § 16

_____

United States District Judge

17

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: 1:2008CV00389 |
| Plaintiff, | JUDGE: Hon. R.M. Urbina |
| v. | DECK TYPE: Antitrust |
| COOKSON GROUP PLC,<br>COOKSON AMERICA INC.,<br>FOSECO METALLURGICAL INC., and<br>FOSECO PLC, | DATE STAMPED: |
| Defendants. | |

---

## CERTIFICATE OF SERVICE

I, Leslie D. Peritz, hereby certify that on May 22, 2008, I caused a copy of the foregoing Certificate of Compliance with Provisions of the Antitrust Procedures and Penalties Act and the Motion and Memorandum of the United States For Entry of Final Judgment with the attached proposed Final Judgment to be served on defendants COOKSON PLC, COOKSON AMERICA INC., FOSECO METALLURGICAL INC., and FOSECO PLC by mailing the documents electronically to the duly authorized legal representatives of each defendant, as follows:

Counsel for COOKSON GROUP PLC and
COOKSON AMERICA INC.:

Counsel for FOSECO METALLURGICAL
INC . and FOSECO PLC:

Thomas A. McGrath, Esquire
Linklaters LLP
1345 Avenue of the Americas
New York, New York 10105
(212)903-9140

Anthony Swisher, Esquire
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
(202) 887-4263

Leslie D. Peritz
PA Bar No. 87539
U.S. Department of Justice
Antitrust Division
1401 H Street, N.W., Suite 3000
Washington, D.C. 20530
(202) 307-0924